

Ievgeniia Vatrenko
2 Park Avenue, Floor 20
New York, NY 10016
jenny@vatrenkolaw.com

August 12, 2026

**VIA ECF**

The Honorable James Donato
United States District Court, Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, California

Re:     *Interdata Network, Inc., et al. v. Wang, et al.*, Case No. 3:25-cv-03798-JD
        Letter Brief Concerning Unresolved Discovery Disputes

Dear Judge Donato:

Pursuant to Paragraph 18 of the Court's Standing Order, Plaintiffs submit this letter concerning the discovery disputes with Defendant Kenzi Wang that remain following the Court's June 30, 2026 order (Dkt. 89). Plaintiffs certify that they have been meeting and conferring with Wang's counsel since April 20, 2026, at the Court's direction, and most recently during the July 22, 2026 telephonic conference contemplated by Wang's July 21 letter (Dkt. 92), and that the parties are at impasse. At the July 22 conference, Wang's counsel agreed that issues on which the parties have already conferred, and on which Wang's amended responses stand on his prior objections, require no further conferral and are "at impasse and ripe for resolution by the Court." Responding to Plaintiffs' May 27 letter (Dkt. 85) as Dkt. 89 directed, Wang assured the Court that each item of relief requested "has been addressed," that the requested order "is moot," that the remaining disputes were "discrete," and that his amended responses and a Rule 26(b)(5)(A) privilege log "by August 7, 2026" would follow. (Dkt. 92 at 1–3.) The promised responses do not resolve the categories Dkt. 92 identified as remaining nor the commitments Wang recited to the Court: no privilege log has been served, and Wang has never amended his responses to the Second Set of Requests for Production. As to that set, Wang's counsel confirmed in writing on April 25, 2026, what Wang would supplement—including Request Nos. 3, 23, and 37—and committed to serve those supplemental responses "on the date we agreed for all parties (May 15, 2026)." Nothing was served on May 15, and nothing has been served since.

**1. The joint-prosecution/common-interest objections withhold non-privileged facts and documents.** (2d ROGs 8(c)–(f), 11(d)–(e), 13(d), 14(c)–(h), 15; 3d RFPs 17–20, 26–27, 29, 32, 34–35; Ex. A–B.) Dkt. 92 identifies this category, omitting only Interrogatory No. 15, as the principal remaining dispute. The common-interest doctrine is not a standalone privilege; it is an exception to waiver that presupposes an underlying privileged communication. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). <u>First</u>, Wang bears the burden of establishing the doctrine's predicates: each withheld communication must have been made "in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Id*. He cannot carry that burden while withholding the arrangement's existence, parties, effective date, subject matter, and whether it is written, which are facts Rule 26(b)(5)(A) and Standing Order ¶ 7 require him to supply at the time of assertion. Wang's amended responses now admit that "[a] common-interest arrangement exists among certain claimants and their respective counsel," yet disclose nothing about it. <u>Second</u>, Wang's own communications, agreements, and financial

dealings with Liu and Ding, whom he swears under oath he has known since 2019 and neither of whom is his counsel, are not attorney-client communications, and nothing predating the arrangement can be protected. Privilege attaches document by document; "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005). <u>Third</u>, a party may not refuse to state facts because he learned them through assertedly privileged channels. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981). Yet ROG 15, requesting Wang's knowledge of the Qu/Ding KYC arrangement pleaded at FAC ¶¶ 15–16, which his June 26 letter promised in terms ("Wang will answer his knowledge of the Qu/Ding KYC arrangement"), is answered only with "knowledge, if any, … derives from communications protected by" privilege. As for the anti-SLAPP overlay, Dkt. 92 disclaims it: "Defendants are not withholding discovery because Wang's special motion to strike is pending," yet asserts in the same paragraph that the motion "bears on the proportionality and sequencing of this category." But the anti-SLAPP discovery stay does not apply in federal court, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). Relevance is measured by the operative pleading, which pleads the coordination. (FAC ¶¶ 139–144, 293(h); Fifteenth Cause of Action.) And Wang has not sought a stay or sequencing relief. Finally, the privilege log, represented to the Court as coming "by August 7, 2026" (Dkt. 92 at 2) is still unserved.

**2. Relevance objections keyed to other lawsuits' pleadings fail against this Complaint.** (3d RFPs 24–25, 31, 33, 36–37, 22(d); Ex. B.) Nos. 24–25, 31, 33, and 36–37 are Dkt. 92's third "remaining" category, for which Wang promised Rule 34(b)(2)(C) withholding statements, and 22(d) is withheld on the same relevance rationale. Wang continues to refuse discovery concerning Liu, Goopal, Qu, and Ding on the ground that they are "not mentioned" in the operative Complaint. The FAC pleads each of them (¶¶ 13–16), the Liu token distribution through the wallet-substitution finding (¶¶ 127–138), and the coordinated-litigation conspiracy (¶¶ 139–144, 293(h)). Wang conceded the point in part: his June 26 letter agreed the "not named in the FAC" objection "will be withdrawn" as to "the discrete subjects actually pleaded in this action," which are the Liu token distribution and his knowledge of the Qu/Ding KYC arrangement. He honored that as to the Liu distribution (3d RFP 23(a)–(c)) but not the KYC arrangement: his amended answer to ROG 15 objects on the very ground he withdrew, that the FAC "does not reference Qu, Ding, or any arrangement." The Ding requests (RFPs 31, 33, 36) claim no privilege at all, only relevance, though Ding is pleaded as the investor Wang introduced to Plaintiffs (FAC ¶ 16), and financial dealings among alleged co-conspirators are core conspiracy discovery. Request No. 37, seeking Wang's financial transactions with Qu, likewise asserts no privilege. Wang's amended responses to Request Nos. 29, 32, 34, 35, and 37 each state that responsive documents "if any" are being withheld, without stating whether any exist. That is not a Rule 34(b)(2)(C) response: the Rule requires the objecting party to state whether responsive materials are being withheld, and an evasive response "must be treated as a failure to … respond." Fed. R. Civ. P. 37(a)(4). The point has particular force as to Qu, whom Wang swears under oath he "has not communicated with."

**3. The financial-privacy and "blockchain sensitivity" objections (Dkt. 61) do not defeat tracing discovery.** (2d ROGs 12, 20(b), 23; 2d Set RFPs 3, 37; Ex. A, D.) In Dkt. 61 Wang argued that wallet addresses are "uniquely sensitive" because blockchains are publicly viewable, and that "confidentiality designations govern use after production, not the threshold question of proportionality." But "[r]esolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted," and a party's privacy interest is protected through a "carefully crafted protective order," not by withholding. *Soto v. City of Concord*, 162 F.R.D. 603, 616, 617 (N.D. Cal. 1995). Wang has himself now

disclosed six wallet addresses in a verified answer, designated CONFIDENTIAL under the Protective Order, the very accommodation he says is unavailable. Only Wang can identify his own wallets and exchange accounts, and the burden is minimal. Wang's proposed "narrowing" to wallets "used in connection with his $CERE fundraising activities" is illusory for the reason Dkt. 52 explained: the diverted funds were third-party purchaser payments intercepted into wallets Plaintiffs did not know existed. Wang's formulation lets the alleged wrongdoer define the search to exclude the very wallets at issue. Plaintiffs declared impasse on this request on April 27, 2026. His verified answers prove the under-inclusion: ROG 23 identifies no accounts or wallets beyond "the six wallets identified in Response to Interrogatory No. 12," while ROG 20 places approximately "$2.6 million, not $3 million" of Interdata's funds on the Convex Finance platform in 2021, necessarily through wallets or accounts nowhere in that list. Interrogatory No. 12 was to have closed this gap: Wang's June 26 letter promised to "confirm the completeness of the wallet list for the relevant period, identify sender-side sources to the extent known, state disposition, and address whether the identified wallets are those represented to Cerebellum." His amended answer is materially identical to the original and supplies none of it. Wang answers ROG 20(b) under Rule 33(d) by specifying "cryptographic addresses, which will be produced," but Rule 33(d) is unavailable where only Wang knows which addresses are his. The same analysis compels the exchange records (2d Set RFP 37): KYC files and transaction records linking wallets to accounts are essential tracing evidence. Wang no longer contests that request on privacy grounds: on April 25, 2026 he agreed to "state affirmatively after diligent search that no responsive documents exist." He has never served that statement.

**4. Wang's amended First Set responses are non-compliant in form, and he stands on objections Plaintiffs narrowed or he conceded.** (1st Set ROGs 1–7; 1st Set RFP 6; 2d Set RFP 23; Ex. C–D.) Wang's amended First Set answers are captioned Nos. 2, 4, 6, 8, 10, 12, and 14 for a set containing seven interrogatories, four of those captions referring to interrogatories that do not exist. Rule 33(b)(3) requires each interrogatory to be answered separately. As to Request No. 6, Plaintiffs proposed on April 27, 2026 a narrowing limited to the wallet, credential, and remote-access tools Wang used in connection with Plaintiffs' funds, accounts, and systems. Wang never responded to that proposal and his amended response refuses the request in full. Second Set Request No. 23 stands on the same footing: Wang conceded in Dkt. 61 § V that documents "independently relevant and responsive to other discovery requests in this case are not shielded from production merely because they were also reviewed by counsel in preparing the motion," and agreed to produce them. He never did. Plaintiffs seek only the underlying source documents Wang reviewed, not counsel's selection or compilation of them.

**Relief Requested.** Plaintiffs respectfully request an order directing Wang, within 14 days, to: (1) serve verified answers to Second Set Interrogatory Nos. 8(c)–(f), 11(d)–(e), 12, 13(d)–(e), 14(c)–(h), 15, 20(a), (b), (e), and 23, including the threshold facts of the acknowledged common-interest arrangement sought by Interrogatory No. 14(h); (2) produce all responsive, non-privileged documents for Second Set RFP Nos. 3, 23 (limited to the underlying source documents Wang reviewed, not counsel's compilation), and 37, Third Set RFP Nos. 17–20, 22(d), 23(d), 24–27, 29, 31–37, and First Set RFP No. 6 as narrowed, applying the agreed temporal scope, together with a privilege log compliant with Standing Order ¶ 7; and (3) pay Plaintiffs' reasonable expenses under Fed. R. Civ. P. 37(a)(5). In the alternative, Plaintiffs respectfully request leave to file a motion to compel under Rule 37(a).

Respectfully submitted,

Jenny Vatrenko
Vatrenko Law P.C.
Counsel for Plaintiffs Interdata Network, Inc.
and Cerebellum Networks, Inc.


cc:      All counsel of record via CM/ECF