VATRENKO
LAW P.C.

Ievgeniia Vatrenko
2 Park Avenue, Floor 20
New York, NY 10016
jenny@vatrenkolaw.com

November 18, 2026

**VIA ECF**

The Honorable James Donato
United States District Court, Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, California

Re: *Interdata Network, Inc., et al. v. Wang, et al.*, Case No. 3:25-cv-03798-JD
Letter Brief Concerning the Stock Transfer Agreement (Defendants Wang and Hu)

Dear Judge Donato:

Pursuant to Paragraph 18 of the Court's Standing Order, Plaintiffs submit this letter concerning one dispute with Defendants Kenzi Wang and Frank Hu, who share counsel: production of the native file, transmittal record, and signing record for the "Stock Transfer Agreement" on which Hu's claim to Cerebellum equity rests. Counsel, who are located more than 50 miles apart, conferred by telephone on October 27, 2026. The request ran to Hu, to Wang, and to their counsel's files. Counsel did not agree to produce any of it, and Plaintiffs declared the dispute at impasse in writing that day. On October 30, counsel responded that the request "assumes a native file that does not exist" and that "Wang's amended responses will address the requests directed to the agreement." No amended responses have been served, and Wang has given no date for them. The dispute goes to whether Hu or Wang holds equity in Cerebellum, which is the subject of the Fourteenth Cause of Action (Dkt. 64).

**Background.** Hu claims 9.9% of Cerebellum under a two-page agreement dated September 20, 2022, by which Wang purportedly transferred half his shares to Hu. Defendants' counsel first sent it to Cerebellum's counsel on October 21, 2024, eleven days after Cerebellum's counsel asked for substantiation that Hu was a shareholder. In this action, Hu's Answer does not mention the agreement; it pleads that Hu "was informed that Defendant Wang purported to transfer 1% of his alleged equity to him" (Dkt. 68 ¶ 112). Wang responded on January 6, 2026 that he would search for documents "relating to the equity transfer" (Second Set RFP Nos. 21, 22); he has produced none. Hu certified on July 24, 2026 that he "was informed of the matters described orally, and no written agreement, memorialization, or communication concerning them exists in his possession, custody, or control" (Second Set RFP Nos. 1, 9). He withdrew that statement on October 1, the evening before his deposition, when the agreement was produced from counsel's files (HU000009–10). Hu's amended response states that the agreement "was located in the files of Responding Party's counsel on September 27, 2026," nearly two years after counsel sent it to Cerebellum's counsel.

Defendants have since given three accounts of this document.

*First*, Hu testified that he acquired the 9.9% in "September 2024 when Kenzi Wang visited me at my Los Angeles home" and signed "a transfer document on his computer" with "my finger

on the screen" (46:9–23); later, that he signed "in September 2022" on Wang's laptop (86:12–24); that ¶ 112 of his Answer is "incorrect" (107:11–14), though it has not been amended; and that he never received a copy (120:17–19; 139:2–8).

*Second*, counsel wrote on October 30 that his firm "holds one copy of the agreement, the file as my firm received it, and that file is what was produced at HU000009–10," and that the October 21, 2024 attachment "is the same file."

*Third*, in responses to requests for admission served November 12 (after the extended deadline, as to which Plaintiffs reserve their rights), both Defendants admitted signing the agreement "on or about September 20, 2022" (Wang No. 16; Hu No. 1), and Wang admitted "that he has had a copy of the Stock Transfer Agreement in his possession, custody, or control since on or about September 20, 2022" (No. 20).

<u>The produced file does not fit the 2022 account.</u> Every PDF stores information about when and how it was made. For the file counsel sent in 2024, which he says is the same file produced here, that information shows three things. First, the file was created on October 18, 2024 (UTC), three days before counsel sent it, using software from airSlate, a company that provides online document-signing services. Second, the account listed as the file's owner is <u>zw2132@gmail.com</u>, an email address Hu testified he does not have (113:6–13). Third, Hu's signature is not part of the page. It is an image placed on top of the page as a separate stamp, also on October 18, 2024 (UTC), by a user the file identifies only as "Mobile User." And on March 3, 2023, more than five months after the date on the agreement, Wang signed a term sheet reciting that "Wang has fully-vested 19.8% equity interest in the Company," with no mention of a transfer of half of it to Hu (No. 3:26-cv-03111, Dkt. 1 ¶ 47 & Ex. 2).

There is one more thing. The signature on the agreement appears to be the same drawing as the signature on the verification of Hu's amended interrogatory answers, which were served the night before his deposition. Laid over each other, the two match stroke for stroke. Hu testified that he drew the verification signature with his finger on a screen that day, October 1, 2026, and that it was not pasted from a file (40:21–41:10; 119:8–18). A signature drawn by hand in 2026 would not reproduce one applied in 2024. Asked to admit how the verification was signed, Hu refused to answer (RFA Nos. 7, 8).

**The dispute (Wang Second Set RFP Nos. 21, 22; Hu Second Set RFP Nos. 1, 9).** Plaintiffs asked Defendants and their counsel for (a) every copy of the agreement in native form; (b) the transmittals by which the file reached counsel in 2024 and Hu's household in September 2026; and (c) the platform's signing or audit record, or a Rule 34(b)(2)(C) statement. Defendants' position is that the produced file is the only copy counsel holds, that both transmittals are privileged, and that Plaintiffs are not "entitled to identification of which privileged communications transmitted which documents."

Wang's admission and counsel's statement cannot both be complete. If Wang has held a copy since September 2022, it is not the file produced, which its own properties date to October 2024, and it has been responsive to Request Nos. 21 and 22 since January. If the produced file is the only one, Wang should say so under oath. Either answer establishes what this document is. As to the transmittals, a pre-existing document does not become privileged by being sent to a lawyer, *Fisher v. United States*, 425 U.S. 391, 403–04 (1976), and the date, sender, and recipient of a

transmittal are facts that a log must disclose. Fed. R. Civ. P. 26(b)(5)(A); Standing Order ¶¶ 7, 13. Hu had no copy in 2024 (139:2–8), so counsel did not receive the file from him; who sent it, and when, is the provenance of the only document on which Hu's claim rests. The 2024 transmittal predates the complaint and is outside ¶ 7(b) of the ESI Order (Dkt. 34). Counsel wrote on October 30 that both transmittals would be logged; no log has been served. Fact discovery closes on January 8, 2027 (Dkt. 38).

**Relief Requested.** Plaintiffs respectfully request an order directing, within 7 days: (a) Wang to produce in native form every copy of the agreement in his possession, custody, or control, including the copy he states he has held since September 2022, with any signing, audit, or account record for the document held by an electronic-signature service, or to state under oath that no copy other than HU000009–10 and no such record exists; and (b) Wang and Hu to serve a privilege log identifying by date, sender, and recipient each communication by which the agreement was transmitted to their counsel in or before October 2024 and to Hu's household in September 2026, and to produce each attachment as transmitted.

Because the responses and certifications described above were served while the agreement was in counsel's files, Plaintiffs also request leave to file a motion under Rules 26(g)(3) and 37 on a full evidentiary record, which Paragraph 19 does not permit Plaintiffs to attach here. The disputed requests and served responses are set out in Schedule A.

Respectfully submitted,

Jenny Vatrenko
Vatrenko Law P.C.
*Counsel for Plaintiffs Interdata Network, Inc.*
*and Cerebellum Networks, Inc.*

cc: All counsel of record via CM/ECF

# SCHEDULE A

## Excerpts of Disputed Discovery Requests and Served Responses (Standing Order ¶ 19)

*Interdata Network, Inc., et al. v. Wang, et al.*, Case No. 3:25-cv-03798-JD

## I. Defendant Kenzi Wang

*Requests:* Plaintiffs' Second Set of Requests for Production to Defendant Kenzi Wang (served November 13, 2025).

*Responses:* Defendant Wang's Responses and Objections to Plaintiffs' Second Set of Requests for Production (served January 6, 2026).

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS relating to FRANK HU, including but not limited to: (1) YOUR relationship with HU; (2) the alleged 1% equity transfer to HU; (3) the $200,000 payment referenced in the Term Sheet; (4) communications with or about HU relating to PLAINTIFFS.

**RESPONSE (January 6, 2026):**

Responding Party objects to sub-part (1) as overbroad to the extent it seeks all documents relating to Responding Party's relationship with Hu without limitation to matters relevant to this litigation, including personal family matters that have no bearing on the claims in this action. Responding Party further objects that sub-part (3) seeks financial records implicating Responding Party's substantial privacy interest in his financial affairs. Subject to and without waiving these objections, Responding Party will conduct a reasonable search for responsive, non-privileged documents relating to the equity transfer and his relationship with Hu concerning Cerebellum, to the extent such documents exist and are in Responding Party's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS relating to the alleged transfer of 1% equity interest in CEREBELLUM to FRANK HU.

**RESPONSE (January 6, 2026):**

Responding Party objects to this Request as duplicative of Request No. 21. Subject to and without waiving this objection, Responding Party incorporates his response to Request No. 21.

## II. Defendant Frank Hu

*Requests:* Plaintiffs' Second Set of Requests for Production to Defendant Frank Hu (served November 13, 2025).

*Responses:* Defendant Hu's Responses and Objections (served December 16, 2025), Supplemental Responses and Objections (served July 24, 2026), and Amended and Supplemental Responses and Objections (served October 1, 2026).

*Defined term:* Definition No. 8: "EQUITY TRANSFER" means the alleged transfer of 1% equity interest in Cerebellum to YOU.

**REQUEST FOR PRODUCTION NO. 1:**

All "Documents regarding equity interests in Cerebellum" as identified in YOUR initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), including but not limited to: (1) any purported transfer documents from Wang to YOU; (2) any agreements, contracts, term sheets, stock certificates, transfer documents, ledgers, ownership records, or any other DOCUMENTS evidencing or relating to the EQUITY TRANSFER; (3) any agreements relating to the alleged 1% equity; (4) documentation of the $200,000 payment allegedly for YOUR benefit.

**RESPONSE (December 16, 2025):**

In addition to the General Objections, Responding Party objects to sub-part (4) as seeking financial records implicating Responding Party's substantial privacy interest in his financial affairs. Subject to and without waiving the foregoing objections, after a reasonable search, Responding Party will produce any responsive, non-privileged documents, if any exist.

**SUPPLEMENTAL RESPONSE (July 24, 2026):**

Responding Party incorporates his previously served objections. Following a reasonable and diligent search, including the supplemental search terms identified in his Supplemental Response to Interrogatory No. 5, Responding Party confirms that no responsive documents exist in his possession, custody, or control other than the bank record produced in response to Request for Production No. 8 of the Second Set. Responding Party was informed of the matters described orally, and no written agreement, memorialization, or communication concerning them exists in his possession, custody, or control. Pursuant to Rule 34(b)(2)(C), no documents are being withheld on the basis of Responding Party's objections.

**AMENDED RESPONSE (October 1, 2026):**

Responding Party incorporates his previously served objections and withdraws the statements in his July 24, 2026 supplemental response that no responsive documents exist other than the bank record and that no written agreement, memorialization, or communication concerning the equity transfer exists. Responding Party produces herewith the Stock Transfer Agreement dated as of September 20, 2022, between Kenzi Wang and Responding Party (HU000009–HU000010), which was located in the files of Responding Party's counsel on September 27, 2026, and the WeChat messages exchanged with Wang from February 7 to February 22, 2023 (HU000002–HU000008), to the extent they relate to the payment referenced in sub-part (4). Responding Party previously produced HU000001. No stock certificate, ledger, or ownership record is in Responding Party's possession, custody, or control, and the payment reflected in HU000001 was $250,000. Following the searches described in his responses to Interrogatory Nos. 5 and 8 and a review of counsel's files, no other responsive

documents have been identified. Pursuant to Rule 34(b)(2)(C), no documents are being withheld on the basis of Responding Party's objections.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS relating to any agreement, understanding, or arrangement between YOU and WANG concerning CEREBELLUM or any equity interest therein.

**RESPONSE (December 16, 2025):**

In addition to the General Objections, Responding Party objects to this Request to the extent it is duplicative of Request No. 1. Subject to and without waiving the foregoing objections, after a reasonable search, Responding Party will produce any responsive, non-privileged documents, if any exist.

**SUPPLEMENTAL RESPONSE (July 24, 2026):**

Responding Party incorporates his previously served objections. Following a reasonable and diligent search, including the supplemental search terms identified in his Supplemental Response to Interrogatory No. 5, Responding Party confirms that no responsive documents exist in his possession, custody, or control other than the bank record produced in response to Request for Production No. 8 of the Second Set. Responding Party was informed of the matters described orally, and no written agreement, memorialization, or communication concerning them exists in his possession, custody, or control. Pursuant to Rule 34(b)(2)(C), no documents are being withheld on the basis of Responding Party's objections.

**AMENDED RESPONSE (October 1, 2026):**

Responding Party incorporates his previously served objections and withdraws the statements in his July 24, 2026 supplemental response that no responsive documents exist other than the bank record and that no written agreement, memorialization, or communication concerning the equity transfer exists. Responding Party produces herewith the Stock Transfer Agreement dated as of September 20, 2022 (HU000009–HU000010) and the WeChat messages exchanged with Wang from February 7 to February 22, 2023 (HU000002–HU000008). No other responsive documents have been identified. Pursuant to Rule 34(b)(2)(C), no documents are being withheld on the basis of Responding Party's objections.